Case No. _____

---

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

──────────────

IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION.

──────────────

IN RE: ENDO HEALTH SOLUTIONS INC.;
ENDO PHARMACEUTICALS INC.; PAR PHARMACEUTICAL, INC.;
PAR PHARMACEUTICALS COMPANIES, INC.; TEVA
PHARMACEUTICALS, USA, INC.; CEPHALON, INC.; WATSON
LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. F/K/A
WATSON PHARMA, INC.,

*Petitioners-Defendants.*

---

On Petition for a Writ of Mandamus
United States District Court for the Northern District of Ohio, Eastern Division
Case No. 1:17-md-2804—Dan A. Polster, District Judge

---

# EMERGENCY PETITION FOR WRIT OF MANDAMUS

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................ 1

ISSUE PRESENTED ........................................................................... 5

RELEVANT BACKGROUND ............................................................. 5

    I. The District Court Creates Three "Tracks" To Manage the
    MDL ................................................................................................. 6

    II. This Court's Earlier Mandamus Ruling Ordering the MDL
    Court's Compliance With the Rules ............................................. 8

    III. The MDL Court Grants Leave for Plaintiffs To Conduct a
    "Trial Preservation" Deposition of Dr. David Kessler Before
    He Provides an Expert Report, Without Specifying Which
    Cases His Testimony Relates to, and Before Discovery Has
    Begun in Any Potentially Relevant Case .................................. 10

STANDARD FOR MANDAMUS ....................................................... 14

WHY THE WRIT SHOULD ISSUE .................................................. 15

    I. The MDL Court's Disregard of the Federal Rules of Civil
    Procedure Governing Expert Testimony Is a Clear Abuse of
    Discretion and Judicial Usurpation of Power ........................... 15

        A. The Order Permitting Plaintiffs' Premature Expert
        Witness Deposition for Use at Trial in Unspecified Cases
        Is Plainly Incorrect ............................................................... 15

            1. The Rules Clearly Prohibit Depositions of
            Undisclosed Experts Who Have Not Provided an
            Expert Report ................................................................. 18

            2. The District Court Indisputably Abused Its Discretion
            Because Plaintiffs Made No Showing That Dr.
            Kessler Will Be "Unavailable" To Testify at a Future
            Trial ................................................................................ 20

  B. The Order Raises New and Important Problems ................................24

  C. The Order Manifests a Persistent Disregard of the
    Federal Rules ........................................................................................26

  D. Without Mandamus Relief, Petitioners Will Suffer
    Irreparable Harm That Cannot Be Corrected on Appeal ...................28

CONCLUSION ....................................................................................................31

ATTACHMENT A
  Doc. 3603, Order Granting Plaintiffs' Emergency Motion for Leave to Take
  Trial Preservation Deposition of Dr. David Kessler

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allgeier v. United States*,
909 F.2d 869 (6th Cir. 1990) ....................................................21, 24

*Am. Airlines v. Forman*,
204 F.2d 230 (3d Cir. 1953) ...............................................................30

*Am. Fed'n of Musicians v. Stein*,
213 F.2d 679 (6th Cir. 1954) ..............................................................26

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ........................................................26, 27

*In re Bendectin Prods. Liab. Litig.*,
749 F.2d 300 (6th Cir. 1984) ..............................................................24

*Carver v. Bunch*,
946 F.2d 451 (6th Cir. 1991) ..............................................................26

*Cheney v. U.S. Dist. Court*,
542 U.S. 367 (2004)......................................................................3, 14

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997) ............................................................29

*Chrysler Int'l Corp. v. Chemaly*,
280 F.3d 1358 (11th Cir. 2002) ..........................................................20

*E.E.O.C. v. Kaplan Higher Educ. Corp.*,
748 F.3d 749 (6th Cir. 2014) ..............................................................17

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)...........................................................................17

*Hancock v. AT&T Co.*,
701 F.3d 1248 (10th Cir. 2012) ..........................................................17

*In re Impact Absorbent Techs., Inc.*,
106 F.3d 400 (6th Cir. 1996) ..............................................................30

*John B. v. Goetz*,
    531 F.3d 448 (6th Cir. 2008) ........................................................14, 24, 26, 28

*Roberts ex rel. Johnson v. Galen of Virginia, Inc.*,
    325 F.3d 776 (6th Cir. 2003) ...................................................................18

*Karum Holdings LLC v. Lowe's Companies, Inc.*,
    895 F.3d 944 (7th Cir. 2018) ...................................................................29

*Koon v. United States*,
    518 U.S. 81 (1996)...................................................................................18

*Ky. Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir.2009) ....................................................................17

*Musser v. Gentiva Health Servs.*,
    356 F.3d 751 (7th Cir. 2004) ...................................................................25

*In re Nat'l Prescription Opiate Litig.*,
    290 F. Supp. 3d 1375 (J.P.M.L. 2017) ......................................................6

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019) ...................................................................30

*In re Nat'l Prescription Opiate Litig. ("MDL Mandamus I")*,
    956 F.3d 838 (6th Cir. 2020) .................................................3, 5, 6, 8, 14, 26, 28

*Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia*
    *de Puerto Rico*,
    248 F.3d 29 (1st Cir. 2001)...............................................................16, 20, 24

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) .................................................................28

*R.C. Olmstead, Inc., v. CU Interface, LLC*,
    606 F.3d 262 (6th Cir. 2010) .............................................................16, 18

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...................................................................29

*In re Sch. Asbestos Litig.*,
    977 F.2d 764 (3d Cir. 1992) ....................................................................27

iv

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
  47 F.3d 277 (8th Cir. 1995) ..............................................17

*Tribble v. Evangelides*,
  670 F.3d 753 (7th Cir. 2012) ...............................19, 25, 29

**Rules**

Fed. R. Civ. P.
  16(b) ..............................................................................9
  26(a)(1)(C) ....................................................................15
  26(a)(2)(A) ..............................................................15, 16
  26(a)(2)(B) ..............................................................16, 18
  26(b)(4)(A) .........................................................16, 18, 19
  26(d) .......................................................................15, 19
  30(a)(2)(A) .....................................................................19
  30(a)(2)(A)(i) .................................................................19
  30(a)(2)(A)(ii) ................................................................19
  30(a)(2)(A)(iii) ...............................................................19
  32(a)(4)(E) .....................................................................21
  32(b)(4) .....................................................................19, 20
  37(c)(1) ..........................................................................17

**Other Authorities**

16 C. Wright, A. Miller, & E. Cooper, Fed. Practice & Proc. § 3935.3
  (2d ed. 2009) .................................................................28

Bloch Judicial Inst., Duke Law, School, *Guidelines and Best
  Practices for Large and Mass-Tort MDL* (2d ed. Sept. 2018) ..........25

Fed. R. Civ. P. 26 advisory committee's note (1993 amend.) ...............16

Wright & Miller, Fed. Practice & Proc. § 1030 ...........................26

## EMERGENCY PETITION FOR WRIT OF MANDAMUS

Pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, the above-captioned Petitioners seek an emergency writ of mandamus compelling the United States District Court for the Northern District of Ohio, Eastern Division, Polster, J., to comply with the Federal Rules of Civil Procedure in the multidistrict proceeding *In re National Prescription Opiate Litigation*, No. 17-md-2804, and issue an order preventing a "trial preservation" deposition of Plaintiffs' expert Dr. David Kessler. The deposition, which Plaintiffs noticed less than a week ago on January 6, 2021, is set to begin in roughly 24 hours, on January 13, 2021.

## INTRODUCTION

In this MDL, which consists of more than 3,000 lawsuits seeking tens of billions of dollars on the theory that pharmaceutical manufacturers' conduct caused the opioid crisis, the district court has forced the Manufacturer Defendants to conduct a cold cross-examination of Plaintiffs' causation expert, *for use at unspecified future trials*, on one week's notice, even though discovery has not yet begun in any case pending in the MDL involving Manufacturer Defendants, and even though the expert has not been designated pursuant to Rule 26 in any such case. In particular, the MDL court granted Plaintiffs leave to take a "trial preservation" (*de bene esse*) deposition of Dr. David Kessler on January 13—typically allowed only when a witness will be unavailable for trial—that Plaintiffs noticed on January 6, 2021,

even though no trial involving Manufacturer Defendants is scheduled and Dr. Kessler has not provided a report in any pending case.

This is no ordinary deposition. It is designed to lock in the witness's *trial* testimony, meaning it will be Defendants' only chance for cross-examination and will be done without a Rule 26-mandated expert report or discovery deposition. Nor is this a run-of-the-mill expert witness. Dr. Kessler was the Plaintiffs' expert on marketing causation in the since-resolved "Track One" MDL cases against Manufacturer Defendants, and Plaintiffs intend his testimony to advance their theory that Manufacturer Defendants' conduct caused Plaintiffs' alleged injuries. But no Plaintiff has designated Dr. Kessler as an expert in any case pending in the MDL involving the Manufacturer Defendants; Dr. Kessler has not provided any expert report in any such case; and Manufacturer Defendants do not even know which cases in the MDL Dr. Kessler's "trial preservation" deposition purportedly pertains to. Moreover, Plaintiffs' stated explanation for needing to take this deposition on an emergency basis—that Dr. Kessler is advising the Biden-Harris Transition on COVID-19 until the Transition ends next week—borders on frivolous.

This is unprecedented. The MDL court's refusal to prevent this premature *trial* testimony forces the Defendants to prepare for the cross-examination of an important plaintiff expert witness, on just a week's notice, before fact or expert discovery has begun in any case pending in the MDL involving the Manufacturer

Defendants, when the witness has not been designated as a testifying expert or provided an expert report in any such case, or sat for a discovery deposition, and without the benefit of any other discovery, and whose testimony Plaintiffs intend to use as an important part of their case(s) (though which case(s) Defendants still do not know). This is precisely the trial by ambush that the Federal Rules of Civil Procedure were designed to eliminate.

Even if Plaintiffs intend Dr. Kessler's causation opinions to be "generic" without regard to any particular jurisdiction—a position that Plaintiffs simply declared during argument on the emergency motion—that ignores that Manufacturer Defendants are entitled to cross-examine Dr. Kessler on jurisdiction-specific facts that may undermine his views, and Manufacturer Defendants are entitled to jurisdiction-specific fact discovery to develop such inquiries. Yet Dr. Kessler has provided no report offering only such generic opinions nor has he made himself available for a discovery deposition on those new opinions.

This Court will grant a writ of mandamus in "'exceptional circumstances' involving a 'judicial usurpation of power' or a 'clear abuse of discretion.'" *In re Nat'l Prescription Opiate Litig.* ("*MDL Mandamus I*"), 956 F.3d 838, 842-43 (6th Cir. 2020) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). This Court granted mandamus less than a year ago in this very MDL "on grounds that, in three instances, the district court has either disregarded or acted in flat

contradiction to" the Federal Rules of Civil Procedure. *Id.* at 841. The MDL court's latest ruling is an additional, prejudicial violation of the Federal Rules.

This Court's immediate intervention is required because the MDL court's decision is plainly incorrect, creates new and important problems, manifests a persistent disregard of the Federal Rules, and Manufacturer Defendants have no other adequate means of remedying this error. Under the Federal Rules, litigants cannot take trial testimony from experts who have not been designated, who have not provided the expert report mandated by Rule 26, and for whom the opposing party has not been able to take a discovery deposition on the expert's proffered opinions. Nor can litigants take a deposition intended to serve as a witness's trial testimony when the purported basis for the witness's unavailability is "he's very busy." And the harm of this *de bene esse* deposition inheres not only in the testimony itself but in the fact that the deposition will happen at all under these circumstances. Nothing but preventing this deposition can remedy the prejudice to Defendants from having such a deposition lying around in the MDL record like a loaded weapon.

Requiring district courts to follow the Federal Rules of Civil Procedure is of exceptional importance not only to this MDL, but to other cases in the Sixth Circuit and nationwide. The MDL court's flouting of the Federal Rules—in essence demanding that Defendants conduct their trial cross-examination of an important plaintiff expert witness before discovery has even started in any potentially

relevant case, before he has even been designated, without an expert report, and on one week's notice—demands emergency relief. The Court should grant the writ.

## ISSUE PRESENTED

The issue presented is whether a district court in a multibillion dollar MDL engages in a judicial usurpation of power or a clear abuse of discretion when it authorizes a *de bene esse* deposition of an important plaintiff expert witness when: (1) discovery has not yet begun in any potentially relevant case for which the deposition may be used at trial; (2) the expert has not been designated as an expert witness in any such case; (3) the expert has not provided an expert report in any such case; (4) Defendants do not even know which case(s) the expert's testimony is for; (5) Defendants have not had an opportunity to take a discovery deposition of the expert; (6) Plaintiffs noticed the deposition only a week in advance; and (7) Plaintiffs have failed to substantiate the expert's unavailability for any future trial.

## RELEVANT BACKGROUND

This Petition arises out of the opioid MDL in the Northern District of Ohio, involving more than 3,000 cases transferred and consolidated for purposes of pretrial proceedings under 28 U.S.C. § 1407(a). *See MDL Mandamus I*, 956 F.3d at 841-42. Plaintiffs in these cases sued manufacturers, distributors, and pharmacies, among others, seeking billions of dollars of damages and abatement associated with the opioid crisis. The Judicial Panel on Multidistrict Litigation appointed the

court below to oversee consolidated MDL proceedings for cases that "concern the alleged improper marketing of and inappropriate distribution of various prescription opiate medications into cities, states and towns across the country." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1377 (J.P.M.L. 2017).

## I. The District Court Creates Three "Tracks" To Manage the MDL

The district court announced at the outset of this MDL that its goal in overseeing the litigation was to facilitate settlement. At the opening hearing on January 9, 2018, the court stated that "[p]eople aren't interested in depositions, and discovery, and trials." Doc. 71 at 4-5.[1] Instead, the court expressed its intention to "do something meaningful to abate [the opioid crisis]," such as "get[ting] some amount of money to the [plaintiff] government agencies for treatment." *Id.* at 4-5.

To that end, the district court has created three "tracks" of bellwether cases, each involving different "issues and parties relevant to the MDL." Doc. 1218; *see also* Doc. 232 at 1 (stating that "settlement will be made more likely" if "the Court . . . creates a 'litigation track'"). The "Track One" cases are lawsuits brought by two Ohio counties, Cuyahoga and Summit. *See id.*[2] These cases were fast-tracked with trial set for October 2019. *MDL Mandamus I*, 956 F.3d at 841-42. The

---

[1] Document numbers refer to entries on the primary MDL docket, No. 17-md-2804.

[2] *See Cnty. of Summit v. Purdue Pharma, L.P.*, No. 18-OP-45090 (N.D. Ohio); *Cnty. of Cuyahoga v. Purdue Pharma, L.P.*, No. 17-OP-45004 (N.D. Ohio).

manufacturer and distributor defendants in the Track One cases settled on the eve of trial, leaving certain pharmacies as the sole remaining defendants. Doc. 2940 at 1. As such, the Petitioners here, *i.e.*, the Manufacturer Defendants in the Track One cases, have no cases in the MDL that are subject to fact or expert discovery.

The district court then issued another Case Management Order ("CMO") allowing the Ohio counties in Track One to amend their complaints, very belatedly, to assert a new theory of liability against the pharmacies. The court set an October 2020 trial date for these new claims in what it called "Track One-B." *Id.* at 1, 4. Trial in these "Track One-B" cases is currently postponed in light of COVID-19. *See* Oct. 5, 2020 Minute Order, *In re Nat'l Prescription Opioid Litig.*, No. 17-md-2804.

The "Track Two" cases are lawsuits brought by local governments in West Virginia. Doc. 1218.[3] The Track Two cases have already been remanded to their respective transferor courts and thus are no longer part of the MDL. Doc. 3059.

The recently created "Track Three" cases are lawsuits brought by two other Ohio counties solely against various pharmacy defendants. Doc. 3282.[4] The Track Three pharmacy cases have been set for trial in October 2021. Doc. 3595. As a

---

[3] *See Cabell Cnty. Comm'n v. AmerisourceBergen Drug Corp.*, Case No. 17-OP45053 (N.D. Ohio); *City of Huntington v. Amerisource Bergen Drug Corp.*, Case No. 17-OP-45054 (N.D. Ohio).

[4] *See Cnty. of Lake, Ohio v. Purdue Pharma, L.P.*, No. 1:18-op-45032 (N.D. Ohio); *Cnty. of Trumbull v. Purdue Pharma, L.P.*, No. 1:18-op-45079 (N.D. Ohio).

consequence, with the exception of the Track Three case involving only two Ohio counties and pharmacy defendants, Doc. 3595, there is not a single case pending in the MDL for which fact or expert discovery has even begun. And there is no case management order, let alone a scheduled trial date, for any other case pending in the MDL, and none that involves the Petitioners here, who will be the target of preserved expert opinion testimony proffered by Plaintiffs' expert Dr. David Kessler.

## II. This Court's Earlier Mandamus Ruling Ordering the MDL Court's Compliance With the Rules

The district court disregarded the Federal Rules of Civil Procedure on several occasions in handling the Track One/Track One-B cases, leading this Court to grant a writ of mandamus in April 2020. *MDL Mandamus I*, 956 F.3d 838. The pharmacies filed timely motions to dismiss the Ohio Counties' amended complaints. But the district court refused to rule on the motions to dismiss, instead ordering the pharmacies, in a case involving just two counties in Ohio, to "produce data on every prescription that their pharmacies had filled for virtually any opioid medication, *anywhere in the United States*, for a period of more than 20 years." *Id.* at 842-43 (emphasis added).

The Track One pharmacy defendants sought a writ of mandamus on the grounds that the district court "either disregarded or acted in flat contradiction to" the Federal Rules of Civil Procedure when it (1) allowed the Counties to amend their complaints 19 months after the court-ordered deadline for doing so; (2)

refused to adjudicate the pharmacies' motions to dismiss; and (3) ordered the pharmacies, in a case brought by just two counties in Ohio, to produce nationwide data on filled opioid prescriptions. *Id.* The pharmacies also moved to stay the district court's discovery order pending resolution of their mandamus petition. *Id.*

This Court granted the motion to stay, and then granted the writ of mandamus. *Id.* In its opinion, this Court made clear that MDL courts must follow the Federal Rules of Civil Procedure just as in any other case in federal court. This Court explained: "Within the limits of those rules . . . an MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL. What an MDL court may not do, however, is distort or disregard the rules of law applicable to each of those cases." *Id.* Indeed, "the requirements of the Civil Rules in an MDL case . . . are the same as those for ordinary litigation on an ordinary docket." *Id.* (internal quotations omitted).

This Court accordingly held that the district court had abused its discretion in allowing the Track One plaintiffs to amend their complaints. Federal Rule of Civil Procedure 16(b) required them to show "good cause" to amend, which "[n]either the Counties nor the district court have even attempted to show." *Id.* at 6. Because granting leave to amend was "plainly incorrect as a matter of law," this Court granted the writ and ordered the amended complaints stricken. *Id.* at 8-9.

**III. The MDL Court Grants Leave for Plaintiffs To Conduct a "Trial Preservation" Deposition of Dr. David Kessler Before He Provides an Expert Report, Without Specifying Which Cases His Testimony Relates to, and Before Discovery Has Begun in Any Potentially Relevant Case**

On January 6, 2021, the Plaintiffs' Executive Committee, on behalf of all MDL Plaintiffs with cases pending in the MDL ("MDL PEC"), filed a two-and-a-half-page motion seeking leave to conduct a "trial preservation deposition" of a "key expert witness," Dr. David Kessler. Doc. 3594. Plaintiffs asserted that Dr. Kessler had been asked to serve as the Co-Chair of the Biden-Harris Transition COVID-19 Advisory Board, and that "Dr. Kessler has requested that the MDL Plaintiffs conduct a trial-preservation deposition" to preserve his testimony "regardless of his future availability." Doc. No. 3594 at 1-2. Even though Dr. Kessler's appointment to the Biden-Harris Transition COVID-19 Advisory Board was announced on November 9, 2020, the MDL PEC waited for two months until January 6 to seek leave to take the deposition on January 13, 2021. *Id.* Plaintiffs provided no explanation for their delay in making this request, did not submit any actual evidence of Dr. Kessler's potential "unavailability" after January 13, and did not submit an affidavit from Dr. Kessler. *See id.*

With the exception of the Track One cases brought by two Ohio counties—which have been fully resolved as to Manufacturer Defendants—Dr. Kessler has not been designated as an expert in any case in the MDL. His expert report in the Track One cases concluded that the manufacturers marketed their products in

10

violation of FDA standards, "contributing to a shift in the practice of medicine with regards to the use of opioids in the treatment of pain." Doc. 1927-3. Dr. Kessler's Track One report, however, based this conclusion in large part on the manufacturers' marketing efforts *in Ohio*. *See, e.g.*, *id.* ¶¶ 112.1-112.10, 128.1-128.9, 147.1-147.12, 160.1-160.16, 169.1-169.10 (summarizing call notes by sales representatives in Ohio to conclude that manufacturers violated FDA standards in their marketing efforts). For example, he asserted that one manufacturer promoted off-label uses of its opioid medications by pointing to "one Ohio call note from April 2003." *Id.* ¶ 306. Other examples abound. *See, e.g.*, *id.* ¶ 337 (relying on "[a]n Ohio sales note from 2004" for the proposition that a manufacturer made misleading claims about the effectiveness of its medications); *id.* ¶¶ 338, 445.1 (relying on "Ohio call notes from 1998" and "Ohio call note from June 2009" for the same proposition).

Dr. Kessler was also disclosed as a marketing expert in an opioid-related lawsuit in New York state court. *See In re Opioid Litig.*, No. 400000/2017 (N.Y. Super. Ct.). Like his expert report in the Track One cases, Dr. Kessler's report in the New York case was jurisdiction-specific: it relied on the manufacturers' promotional efforts *in New York State* to conclude that they caused an opioid abuse crisis there. *See* Doc. 3598 at 12 (discussing Dr. Kessler's reliance on "New York call note[s]" by the manufacturers' sales representatives in his New York report).

Dr. Kessler has not been disclosed as an expert in any other opioid action in the United States.  He has not provided a report pursuant to Rule 26 in any other opioid action in the United States.  And even though Dr. Kessler relied on jurisdiction-specific evidence in both of his prior opioid-related expert reports to reach his conclusions, Plaintiffs' motion seeking a "trial preservation" deposition does not identify which of the nearly 3,000 cases pending in the MDL his testimony would be used in or how he could have expert opinions specific to those particular jurisdictions, since discovery has not yet commenced as to Petitioners in those other jurisdictions.

After a hearing on January 11, 2021, the district court granted the MDL PEC's motion, authorizing the MDL PEC to take a "trial preservation" deposition of Dr. Kessler starting just over 48 hours later, on January 13.  The court embraced an argument the MDL PEC *expressly disavowed* in their reply in support of the motion.  The court held "that there is a strong likelihood that sometime shortly after noon on January 20, 2021, Dr. Kessler will be appointed to a position in the federal government that may prevent him from testifying as an expert witness." Doc. 3603 at 1; *contra* MDL PEC Reply, Doc. 3602, at 6 ("Plaintiffs' motion is based *not* on … future appointments, but on Dr. Kessler's present appointment as COVID-19 Advisory Commission Co-Chair…. Dr. Kessler hypothetically being

re-appointed to head the FDA … [is] entirely speculative …. This Court should reject this [speculation]." (emphasis added)).

The MDL court held that Dr. Kessler's possible future appointment to an unspecified federal government position would make Dr. Kessler unavailable to testify at an unspecified future trial, Doc. 3603 at 1, apparently on the theory—*also* expressly disavowed by the MDL PEC in their reply—that federal government officials cannot testify as paid experts. *But see* MDL PEC Reply, Doc. 3602, at 6 & n.4 ("This Court should reject … [the] speculation … [that] any asserted bar [on rendering expert testimony] applicable to federal employees" would result in Dr. Kessler's unavailability at a future trial because the bar is one "which a federal agency may or may not choose to invoke").

The MDL court granted the MDL PEC leave to conduct their direct examination of Dr. Kessler for three hours on January 13, but permitted Manufacturer Defendants to cross-examine Dr. Kessler for up to 8 hours on another date(s) to be agreed upon by the parties. Doc. 3603 at 1. That multi-day approach arose because at the hearing the court expressed interest in pushing the deposition to a date closer to January 20 to alleviate the prejudice to Defendants from scheduling Dr. Kessler's simultaneous trial and expert deposition on only seven days' notice. But it emerged at the hearing that scheduling Dr. Kessler's deposition closer to January 20 would be difficult because Dr. Kessler has another expert deposition in

unrelated litigation scheduled for all day on January 18 and 19. Just after midnight on January 12 Plaintiffs offered Defendants the option of cross-examining Dr. Kessler on January 13, after the Plaintiffs' direct, or on Friday, January 15th.

Manufacturer Defendants requested that the MDL court stay its order and the deposition pending resolution of this mandamus petition, which the MDL court denied. Doc. 3603 at 2.

## STANDARD FOR MANDAMUS

This Court will grant a writ of mandamus in "exceptional circumstances" involving a district court's "judicial usurpation of power" or "clear abuse of discretion." *MDL Mandamus I*, 956 F.3d at 842-43 (quoting *Cheney*, 542 U.S. at 380). In applying that standard, the Court considers, "among other things," (1) whether "the district court's order is plainly incorrect as a matter of law," (2) whether "the district court's order raises new and important problems," (3) whether the district court's order "manifests a persistent disregard of the federal rules," (4) whether "the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired"; and (5) whether "the petitioner will be damaged or prejudiced in a way not correctable on appeal[.]" *Id.* (quoting *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008)).

# WHY THE WRIT SHOULD ISSUE

I. **The MDL Court's Disregard of the Federal Rules of Civil Procedure Governing Expert Testimony Is a Clear Abuse of Discretion and Judicial Usurpation of Power**

The MDL court's order requires Manufacturer Defendants to conduct a cross-examination of Plaintiffs' marketing causation expert even though he has not been designated as an expert in any case pending in the MDL involving Manufacturer Defendants, has not provided an expert report disclosing his opinions and the bases for those opinions in any such case, and has not sat for a discovery deposition in any such case. The order flatly contradicts the Federal Rules of Civil Procedure governing expert testimony and is a clear abuse of discretion and judicial usurpation of power warranting immediate mandamus relief.

A. **The Order Permitting Plaintiffs' Premature Expert Witness Deposition for Use at Trial in Unspecified Cases Is Plainly Incorrect**

The Federal Rules of Civil Procedure mandate the observance of certain procedures before an expert witness may deposed. At the outset, the Federal Rules provide that "[a] *party may not seek discovery from any source* before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d) (emphasis added). The parties then "must make … initial disclosures at or within 14 days after the parties' Rule 26(f) conference." Fed. R. Civ. P. 26(a)(1)(C).

In addition to those initial disclosures, a party must disclose the identity of any expert witness who may testify at trial. Fed. R. Civ. P. 26(a)(2)(A). "[T]his

disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(A). The report "must contain," among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Critically, "[i]f Rule 26(a)(2)(B) requires a report from the expert … [any] deposition may be conducted *only after the report is provided*." Fed. R. Civ. P. 26(b)(4)(A) (emphasis added).

The purpose of these detailed expert disclosure requirements is explained in the Advisory Committee Notes to Rule 26. Rule 26 "imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial *that opposing parties have a reasonable opportunity to prepare for effective cross examination* and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26 advisory committee's note ¶ 2 (1993 amend.) (emphasis added); *see R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010) (rejecting "cursory" expert report that did not provide an adequate basis for rebuttal or cross-examination). The purpose of requiring the disclosure of a detailed and complete expert is to ensure "that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and … shorten or decrease the need for

expert depositions and thus to conserve resources." *R.C. Olmstead, Inc.*, 606 F.3d at 271 (quotation marks omitted); *see Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) (similar). Rule 26's requirement to identify experts in advance exists for the same reason. *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995). Thus, a party that "fails to provide information … as required by Rule 26(a) … is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Ortiz-Lopez*, 248 F.3d at 35-36 (collecting cases and calling exclusion of expert testimony based on failure to make a required disclosure "a standard sanction").

"[R]ulings allowing expert testimony" are reviewed for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *see E.E.O.C. v. Kaplan Higher Educ. Corp.*, 748 F.3d 749, 752 (6th Cir. 2014). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law," *Ky. Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir.2009), or "venture[s] beyond the limits of permissible choice under the circumstances," *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted).

Here, the MDL court's order granting Plaintiffs leave to take the premature trial testimony of an expert for use in unspecified cases in which he has not even

been disclosed or provided a report is a clear abuse of discretion in both respects.

It is an abuse of discretion by "definition," *Koon v. United States*, 518 U.S. 81, 100

(1996), because it flatly violates Rules 26(a) and 26(b)(4). And it goes well be-

yond the bounds of permissible choices that lie within a district court's discretion

because Plaintiffs failed to establish Dr. Kessler's unavailability, the purported ba-

sis for this emergency "trial preservation" deposition.

### 1. The Rules Clearly Prohibit Depositions of Undisclosed Experts Who Have Not Provided an Expert Report

The district court had no power under the Federal Rules to authorize an ex-

pert deposition, for use at an unspecified trial, of an expert who has not been desig-

nated or provided an expert report in any potentially relevant case in the MDL.

Rule 26(b)(4)(A) states an absolute prohibition: "If Rule 26(a)(2)(B) requires a re-

port from the expert," as it indisputably does here, then "[any] deposition [of the

expert] may be conducted *only after the report is provided*." Fed. R. Civ. P.

26(b)(4)(A) (emphasis added). This Court has explained repeatedly that the Fed-

eral Rules "require[ ] absolute compliance" with Rule 26(a)'s expert disclosure re-

quirements unless the failure is substantially justified or harmless. *R.C. Olmstead,*

*Inc.*, 606 F.3d at 271 (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*,

325 F.3d 776, 782 (6th Cir. 2003)). As the Seventh Circuit has explained, expert

disclosure "is a strict but well-founded requirement" because "[k]nowing the iden-

tity of the opponent's expert witnesses allows a party to properly prepare for trial."

*Tribble v. Evangelides*, 670 F.3d 753, 759-60 (7th Cir. 2012).  Because of the many "ways a party may be prejudiced by an improperly disclosed expert, the sanction [for noncompliance with Rule 26(a)] is severe."  *Id.*

The MDL court here had no power to excuse compliance with either of these rules and authorize a "trial preservation" deposition of an expert who has not been disclosed or furnished an expert report in any potentially relevant case—particularly where the MDL PEC knew about Dr. Kessler's appointment to the COVID-19 Advisory Board on November 9 but waited two months to notice the deposition.  Contrary to the arguments raised by the MDL PEC to the district court (Doc. 3594), neither Rules 30(a)(2)(A) nor 32(b)(4) authorized the district court's order.

Rule 30(a)(2)(A) generally permits a district court to grant leave to take a deposition "before the time specified in Rule 26(d)"—that is, before the parties have conferred under Rule 26(f).  But Rule 30(a)(2)(A) nowhere authorizes a district court to grant leave to take an expert deposition in derogation of Rules 26(a) and 26(b)(4)(A).  While the Rules use broad catch-all provisions when they grant courts broad discretion to excuse compliance, Rule 30(a)(2)(A) is exceedingly narrow.  It enumerates four narrow situations in which a deposition may be taken with leave of court, *see* Fed. R. Civ. P. 30(a)(2)(A)(i)-(iii) & (B), and specifically enumerates that it may permit a deposition "before the time specified in Rule 26(d),"

without specifying that a deposition can be taken in violation of Rules 26(a) or 26(b)(4).  It cannot be.

Rule 32(b)(4) similarly provides no authority to excuse compliance with Rules 26(a) or 26(b)(4).  Rule 32(b)(4) addresses the *use* of deposition testimony, not the procedures and requirements for taking depositions.  *See* Fed. R. Civ. P. 32(b)(4); *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362 n.8 (11th Cir. 2002) ("[T]he Federal Rules of Civil Procedure … draw no distinction between" "discovery and *de bene esse* depositions.").  The Rule provides only that a party may use a witness's deposition testimony as a substitute for testimony at trial in certain instances.  Fed. R. Civ. P. 32(b)(4).  It provides no hidden additional source of authority for a district court to grant leave to take a deposition that does not otherwise comply with the Federal Rules of Civil Procedure.

> **2.** **The District Court Indisputably Abused Its Discretion Because Plaintiffs Made No Showing That Dr. Kessler Will Be "Unavailable" To Testify at a Future Trial**

Even if the district court had power to authorize this deposition (which it did not), doing so was a clear abuse of discretion.  The examination scheduled to begin hours from now is exactly the "ambush" expert testimony that the detailed provisions of Rule 26 were designed to prevent.  *Ortiz-Lopez*, 248 F.3d at 35-36.

Plaintiffs noticed this deposition on January 6 *before discovery had even begun in any potentially relevant case in the MDL*, and then set the deposition for

7 days later on January 13.  They submitted *no evidence* of Dr. Kessler's supposed "unavailability"—not even so much as an affidavit from Dr. Kessler.  Defendants were not prepared to take *any* depositions (or even to begin discovery), let alone cross-examine an important plaintiff expert witness.  And Plaintiffs intend to use Dr. Kessler's testimony as a cornerstone of their marketing claims, raising the stakes for this prejudicial and procedurally improper deposition.  But the clearest and most obvious reason that Dr. Kessler's deposition is unlawful is that the entire basis for the deposition—that Dr. Kessler will be unavailable—is speculative and grossly inadequate.

The only legal grounds for permitting Dr. Kessler's deposition on the basis of "unavailability" is Rule 32(a)(4)(E), which requires a party seeking the *de bene esse* deposition to establish "exceptional circumstances" warranting the extreme procedure.  Fed. R. Civ. P. 32(a)(4)(E).  As this Court has held: "How exceptional the circumstances must be … is indicated by its companion provisions." *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990).  "These authorize use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify *because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena*." *Id.* (emphasis added).  *Allegeier* is particularly relevant here, because there the Court found there that doctors are

not "automatically unavailable" just because they are doctors, and that plaintiffs bear the burden to "prove" a witness's unavailability. *Id.*

Here, Plaintiffs' argument for unavailability consisted of a single paragraph, stating that "Dr. Kessler has recently been asked to serve as the Co-Chair of the COVID-19 Advisory Board, a task force of physicians and scientists to advise the incoming Biden administration on matters related to the COVID-19 pandemic." *Id.* According to Plaintiffs, "[b]ecause of his role on the Advisory Board, and the urgent, unprecedented, and unpredictable nature of the pandemic and the associated work he will be called upon to do, Dr. Kessler has requested that the MDL Plaintiffs conduct a trial-preservation deposition on January 13, 2021." *Id.* In their reply brief, Plaintiffs doubled down on this explanation: "Plaintiffs' motion is based … on Dr. Kessler's *present* appointment as COVID-19 Advisory Commission Co-Chair." Doc. 3602, at 4-5 (emphasis in original). "Plaintiffs' precise point" is that "there is a substantial likelihood that [the pandemic] will not [end before the next MDL trial]," and as a consequence, Dr. Kessler's "Taskforce work will render him unavailable when the next MDL case goes to trial." *Id.* at 5.

That argument is baseless. Having a busy schedule does not render a witness unavailable under the Federal Rules. In any event, the supposed basis for his busy schedule is nonsense on its own terms. Dr. Kessler's service on the Biden-Harris Transition COVID-19 Advisory Board will end by Inauguration Day on

January 20—that is what it means to be a member of a *Transition* Advisory Board. In their filings in the district court, Plaintiffs foreswore *any* reliance on any possible *future* appointments as the basis for Dr. Kessler's unavailability, calling any such appointments "speculative" and "hypothetical." *Id.* at 6. With the Biden-Harris Transition concluding just over a week from now, Dr. Kessler will be available to be disclosed, to offer a report, and to be deposed before any relevant trial.

Putting aside that the asserted basis for Dr. Kessler's conflict cannot persist beyond January 20, there is no basis to believe that Dr. Kessler will be unavailable in the future just because of his service on a future COVID-19 Task Force (should one come into existence)—any more than any other physician with a busy practice could assert he will be unavailable to testify in any trial. Plaintiffs did not offer any evidence to show unavailability. Dr. Kessler, for instance, did not furnish an affidavit of any kind stating that he will be "unavailable" for a future trial, let alone attesting that the *only* day in 2021 that he could be available for testimony is January 13. It beggars belief that Dr. Kessler will be completely unavailable in any form or manner from January 13, now January 15, indefinitely into the future whenever a future trial or trials are held. Indeed, Dr. Kessler's COVID-19-related duties for the transition team cannot possibly be so all-consuming as to make him unavailable under the Federal Rules, particularly when Dr. Kessler is now sitting for depositions on January 13, 15, 18 and 19.

The MDL court's speculation that Dr. Kessler might be appointed at noon on January 20 to a federal government position that would make him "unavailable," Doc. 3603, at 1, was *expressly disavowed* by Plaintiffs, *see* Doc. 3602, at 5-6. It is difficult to fathom how a court could hold that a witness was "prove[n]" unavailable, *Allgeier*, 909 F.2d at 876, when the party that seeks the witness's premature trial testimony expressly asserts that the witness will *not* become unavailable for that reason, and indeed calls the proposition "speculative" and "hypothetical[ ]." *Id.* No party to this case takes the position that Dr. Kessler will be unavailable after January 20 on the grounds that he will be appointed to a federal government position that will preclude him from testifying at a future trial. *See* Doc. 3602, at 5-6. The district court's *sua sponte* embrace of this argument that Plaintiffs *expressly disavowed* demonstrates how clearly the MDL court abused its discretion here.

* * * * *

Beyond the merits, this Court considers four additional factors in evaluating a mandamus petition. *John B.*, 531 F.3d at 457. Although there is no requirement that all factors weigh in favor of the writ, *see In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984), all four factors support mandamus in this case.

### B.    The Order Raises New and Important Problems

The specific question here—whether a party can be forced to conduct its trial cross-examination of an opposing party's expert witness under circumstances

of extreme prejudice and in derogation of the bedrock requirements of the Federal Rules governing expert witness testimony—is tremendously important. Courts have repeatedly held that failing to disclose an expert or permitting an expert to testify about matters that go beyond the expert's furnished expert report is "extremely prejudicial," *Tribble*, 670 F.3d at 760, because it interferes with the opposing party's ability "to properly prepare for trial," *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004); *see also Ortiz-Lopez*, 248 F.3d at 35 (rules exist to "prevent an ambush at trial"). And because the dispute here involves an MDL, that "extreme[ ] prejudice" is multiplied many times over in light of the three thousand separate lawsuits pending before the MDL court.

The broader question here—the extent to which an MDL court can ignore the Federal Rules of Civil Procedure—is also enormously consequential. MDLs constitute a substantial portion of the federal civil docket.[5] These cases involve some of the most consequential civil disputes pending today, and MDL courts wield enormous power over the proceedings. Litigants, the courts, and the public should know that even if the only available interlocutory remedy is mandamus,

---

[5] As of December 2019, there were 132,380 actions pending in 189 MDLs. *See* United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (Dec. 16, 2019). These cases make up nearly *half the pending civil caseload* in the federal courts, up from 16% in 2002. *See* Bloch Judicial Inst., Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDL*, at vii (2d ed. Sept. 2018) (citing data published by the Administrative Office of U.S. Courts).

courts of appeals will not hesitate to issue the writ where an MDL court's failure to abide by the Federal Rules is clear and "extremely prejudicial."

The MDL court's disregard for the Federal Rules here underscores the need for appellate intervention. This Court should make clear that, although MDL courts have discretion with respect to scheduling and docket management, MDLs remain subject to the binding procedures in the Federal Rules. Those rules cannot be ignored on the theory that, because the cases in MDLs frequently settle, an MDL court faces little risk of reversal for procedural error on appellate review.

### C. The Order Manifests a Persistent Disregard of the Federal Rules

This is not the first time the MDL court here has ignored the Federal Rules. This Court granted mandamus once already because the MDL court's actions "manifest[ed] a persistent disregard of the federal rules." *MDL Mandamus I*, 956 F.3d at 45-46. The Federal Rules are promulgated by the Supreme Court under the Rules Enabling Act, 28 U.S.C. § 2072, and "have the force and effect of statutes," *Am. Fed'n of Musicians v. Stein*, 213 F.2d 679, 686 (6th Cir. 1954); *see also* Wright & Miller, Fed. Practice & Proc. § 1030; *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991). This Court thus has held that mandamus is an appropriate remedy where a district court "manifests a persistent disregard of the federal rules." *John B.*, 531 F.3d at 457. Indeed, cases involving repeated failures to follow the Federal Rules "are particularly prone to mandamus review." *In re Am.*

*Med. Sys., Inc.*, 75 F.3d 1069, 1089 (6th Cir. 1996) (citation and internal quotation marks omitted).

Here, the MDL court *announced* an intention to sidestep the Rules at the opening hearing in the MDL on January 9, 2018, stating that it had little interest in the niceties of the Federal Rules and that its goal in overseeing the MDL was to drive a settlement that would "do something meaningful to abate [the opioid] crisis," including by "get[ting] some amount of money to the [plaintiff] government agencies for treatment." Doc. 71 at 4-5. In the MDL court's words: "People aren't interested in depositions, and discovery, and trials. People aren't interested in figuring out the answer to interesting legal questions like preemption and learned intermediary." *Id.* at 4. "[W]e don't need a lot of briefs and we don't need trials" because "none of those are going to solve what we've got." *Id.* at 9.

The MDL court's serial departures from the Federal Rules all rest on the unsupportable premise that the Federal Rules and basic principles of adversarial litigation do not apply in the context of this MDL. This repeated disregard for the Federal Rules necessitates mandamus. *See, e.g.*, *In re Sch. Asbestos Litig.*, 977 F.2d 764, 793-94 (3d Cir. 1992) ("[W]hereas it is inevitable that judges will make mistakes from time to time when ruling on [motions]," the error of persistently refusing to follow the Federal Rules is "entirely avoidable."). This Court's

intervention is necessary to (again) correct the district court's mistaken view that the MDL context gives the court license to disregard the Federal Rules.

### D. Without Mandamus Relief, Petitioners Will Suffer Irreparable Harm That Cannot Be Corrected on Appeal

Mandamus is also is urgently needed because the Petitioners have no alternative means of redress and the district court's order will prejudice them in ways not correctable on appeal. The failure to follow the Federal Rules is precisely the type of error that can only appropriately be resolved through mandamus, as review would otherwise be barred by the final judgment rule. Where, as here, interlocutory discovery rulings implicate important questions about the limits of a district court's power, this Court and others have recognized that mandamus provides the only adequate "means of immediate appellate review." *John B.*, 531 F.3d at 457 (citation omitted); *see MDL Mandamus I*, 956 F.3d at 845; *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156-57 (9th Cir. 2010) (citing 16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3935.3 (2d ed. 2009)).

The district court's error here in particular—requiring defendants to conduct the cross-examination of an important plaintiff expert for use at an unspecified trial in a complex litigation on one week's notice, without the expert's disclosure or report setting forward the complete bases for his opinions in any relevant case involving those defendants, and without the benefit of any other preparatory discovery including, *inter alia*, of the relevant plaintiff jurisdiction(s)—is "extremely

prejudicial." *Tribble*, 670 F.3d at 760; *see Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 952 (7th Cir. 2018) (similar).

The prejudice to Petitioners is magnified further by the fact that this case is part of a large MDL. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1018 (5th Cir. 1997) ("Our traditional reluctance to meddle in the formulation of a district court's trial plan is tempered by the demands placed upon judicial resources and the extraordinary expenses to litigants that typically accompanies mass tort litigation."). Plaintiffs—the parties seeking to take this deposition and use it at unspecified trials—are flat wrong that there can be no irreparable harm just because this testimony might be excluded at a later date. Such testimony might not be. And forcing the Defendants to prepare for and take a potential "trial deposition" of an expert in an unidentified case, on less than a week's notice, without the benefit of an expert report setting forth his specific opinions or even discovery in any particular case, is the very definition of prejudice. It should not be sanctioned.

This error is "extremely prejudicial" in an ordinary case and exponentially more prejudicial in an MDL, rising to the level of a clear abuse of discretion and usurpation of judicial power. *See Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (issuing mandamus to prevent class certification because though "defendants would have various defenses … they could not be confident that the defenses would prevail … They may not wish to roll these dice. That

is putting it mildly.  They will be under intense pressure to settle.").  The Federal

Rules are written to be followed and permitting a party to violate the Rules on the

theory that a clear violation may later be rendered harmless at some unspecified

date is an extraordinary breach of the duty of the courts to ensure that parties to

federal cases receive fundamentally fair proceedings.

Moreover, unless this Court acts, the MDL court's violations of the Federal

Rules may continue as the court continues to process the nearly 3,000 cases before

it.  As a matter of law and fairness, the cases in this MDL must be litigated in con-

formance with the Federal Rules.  If they are not, the harm will be felt not only by

Petitioners but also the public at large, given the public interest in securing just and

efficient resolution of the litigation.  *See In re Nat'l Prescription Opiate Litig.*, 927

F.3d 919, 923 (6th Cir. 2019).  Mandamus is required to ensure that all of these

cases are litigated fairly and in accordance with the rule of law.

Even if the Court were to conclude that these errors are correctable on ap-

peal, "the clearly erroneous nature of the district court's order[s] calls for a more

immediate reply."  *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400 (6th Cir.

1996); *see also Am. Airlines v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953) (ordi-

nary appeal can be an inadequate remedy if the "challenged assumption or denial

of jurisdiction" is "so plainly wrong as to indicate failure to comprehend or refusal

to be guided by unambiguous provisions" of the law).

* * * * *

Detached from the Federal Rules, the MDL court has been guided instead by nothing more than its own prerogative. The MDL court has granted Plaintiffs leave to lock in the trial testimony of a key expert witness even though Defendants do not know what case(s) in the MDL his testimony is for, even though discovery has not opened in any potentially relevant case in the MDL, even though the expert has been not disclosed or provided an expert report in any such case, and even though the expert's claim to future unavailability is specious.

## CONCLUSION

For the foregoing reasons, this Court should issue a writ of mandamus directing the district court to prevent the trial testimony deposition of Dr. Kessler.

Dated: January 12, 2021

Respectfully submitted,

/s/ *R. Stanton Jones*
Jonathan L. Stern
R. Stanton Jones (lead counsel)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 942-5000
jonathan.stern@arnoldporter.com
stanton.jones@arnoldporter.com

Andrew K. Solow
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019

Tel: (212) 836-8000
andrew.solow@arnoldporter.com

*Attorneys for Endo Health*
*Solutions Inc.; Endo Pharmaceuticals Inc.;*
*Par Pharmaceutical, Inc.; and Par*
*Pharmaceuticals Companies, Inc.*


/s/ *Rebecca J. Hillyer* (consent)
Eric W. Sitarchuk
Rebecca J. Hillyer
Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com
harvey.bartle@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Blvd., Suite 5300
Miami, FL  33131-2339
Tel:  (305) 415-3416
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals, USA,*
*Inc.; Cephalon, Inc.; Watson Laboratories,*
*Inc.; Actavis LLC; and Actavis Pharma,*
*Inc.*

**CERTIFICATE OF COMPLIANCE**

This petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,453 words, excluding accompanying documents required by Fed. R. App. P. 21(a)(2)(C), as counted using the word-count function on Microsoft Word 2016 software.

This petition complies with the requirements of Fed. R. App. P. 32(a) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

*/s/ R. Stanton Jones*
R. Stanton Jones

**CERTIFICATE OF SERVICE**

I certify that on January 12, 2020, I filed the foregoing with the Clerk of the Court using the ECF System which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

*/s/ R. Stanton Jones*
R. Stanton Jones

# ATTACHMENT A
(Doc. 3603, Order Granting Plaintiffs'
Emergency Motion for Leave to Take Trial
Preservation Deposition of Dr. David Kessler)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | ) ) | |
| | ) | **Judge Dan Aaron Polster** |
| *All Cases* | ) ) | |
| | ) | **ORDER** |
| | ) | |

Before the Court is the Emergency Motion for Leave to Take Trial Preservation Deposition of David Kessler, M.D. (Doc. #: 3594) filed by Plaintiffs' Executive Committee. Briefs in opposition were filed by the Distributor Defendants (Doc. #: 3597), Manufacturer Defendants (Doc. #: 3598), Pharmacy Defendants (Doc. #: 3599), and the Small Distributor Defendants (Doc. #: 3600). Plaintiffs filed a reply (Doc. #: 3602). On January 11, 2021, the Court heard oral argument regarding the Motion.

At oral argument, Plaintiffs represented to the Court that there is a strong likelihood that sometime shortly after noon on January 20, 2021, Dr. Kessler will be appointed to a position in the federal government that may prevent him from testifying as an expert witness, and Plaintiffs further represented there is no other possible witness with the experience and expertise to offer the opinions Dr. Kessler will offer in this MDL. For those reasons and as stated on the record, Plaintiffs' motion is granted. The Court allows the trial preservation deposition but reserves ruling on the admissibility of Dr. Kessler's testimony in any trial.

The Plaintiffs may conduct direct examination of Dr. Kessler for no longer than three hours on January 13, 2021. Manufacturer Defendants collectively may conduct cross examination of Dr.

Kessler for no longer than eight hours and at a time agreed by the parties and to conclude no later than noon January 20, 2021.

The parties shall provide the Court with the deposition schedule and access so that the Court can supervise the testimony, as requested by the parties.

No later than 11:59 pm today, January 11, 2021, Plaintiffs shall provide to Defendants a list of all documents they will use in their direct examination of Dr. Kessler. No later than 11:59 pm on January 12, 2021, Plaintiffs shall provide to Defendants the information requested regarding any payments received by Dr. Kessler for his work as an expert witness in this MDL and a list of his retentions.

Plaintiffs have stipulated they will not solicit testimony from Dr. Kessler regarding Distributor and Pharmacy Defendants. Plaintiffs have further stipulated they will not solicit testimony specific to any jurisdiction, and the scope of testimony will be limited to issues of general causation.

Defendant Endo Pharmaceuticals, Inc.'s request for stay of this order pending a petition for writ of mandamus is denied.

**IT IS SO ORDERED.**


 **/s/ Dan Aaron Polster  January 11, 2021**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

2